Gregor D. Guy-Smith(CABN 79058)
214 Duboce Street
San Francisco, California 94103
Telephone: 415 531-1719
Facsimile: 415 255-8631
Email: guysmith87@hotmail.com

Attorney for Defendant
SHANE CRATTY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**San Francisco Venue**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>SHANE CRATTY, )<br>)<br>)<br>)<br>)<br>Defendant. ) | Docket No. 3:19cr00681-003 CRB<br><br>DEFENDANT'S SENTENCING<br>MEMORANDUM<br><br>Date October 13, 2021<br>Time: 9:30 a.m.<br>Before: Hon. Charles R. Breyer |

**I. INTRODUCTION**

Pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) Plea Agreement, Shane Cratty entered a plea of Guilty to a violation of Title 21 USC 846, 841(a)(1), (b)(1)(C), Conspiracy to Distribute Fentanyl (Class C felony). The parties have agreed that a sentence of imprisonment between 84 and 96 months is sufficient, but not greater than necessary to fulfill the requirements for sentencing enumerated in Title 18 USC 3553. The United States Probation Officer has prepared a Presentence Report (PSR) and recommends that the Court determine that the advisory United

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

States Sentencing Guideline (USSG) in the case is 35. Mr. Cratty has no objection to the Guideline recommendation in the PSR.

Mr. Cratty comes now before the Court requesting that the Court adopt the agreement of the parties and that, based on the information presented below and in the record of this case, sentence Mr. Cratty to 84 months imprisonment, to be followed by a three-year term of Supervised Release. Further, Mr. Cratty requests that the Court recommend that he be afforded the treatment available in the Bureau of Prisons' Residential Drug Abuse Treatment Program (RDAP).

## II. BACKGROUND

The present prosecution stems from the tragic overdose deaths of a young, addicted father, Patrick O'Neil and his infant son, Liam. Shane Cratty, himself an addict, was doing his close friend a favor when he agreed to transport the middle person in a one-gram Fentanyl transaction on September 13, 2019, in Santa Rosa, California. His friend gave Shane the money for the transaction, which he in turn gave to the middle person. He then drove the middle person to the place of the transaction, where the seller gave the drugs to the middle person. The middle person gave the drugs to Shane, who gave it to his friend. Later on, the night of September 13, Shane's friend overdosed on the Fentanyl and his infant son somehow also came in contact with the Fentanyl, or residue, and died that evening. The father died several days later.

Shane's involvement in this offense evolved from a struggle with addiction since his adolescence and his continued lifestyle surrounding drugs. Understanding Shane's involvement in this tragedy is dependent on understanding his background, his relationships, and his addiction.

28-year-old Shane Scott Cratty was born in a "home birth" on April 25, 1993, in Santa

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

Rosa, California. He is the only child of the marriage of Richard Brandon Cratty, Jr. and Jill Nussinow. Richard was born in Bangor, Maine, and raised in New Jersey and moved with his family to California while he was still in his adolescence, when he moved with his family to California. He is currently employed by an electric and solar energy company based in Gualala on the North Coast. Previously he worked in marine construction and as a director for a national construction company. He is also trained in clinical hypnosis, which he practiced for a period of time in Santa Rosa.

Jill was born in Brooklyn and raised primarily in Long Island, New York. She holds a Master of Science Degree in nutrition and, is the author of several vegan oriented cookbooks, including *Vegan Under Pressure, Nutrition Champs, The New Fast Food: The Veggie Queen Pressure Cooks Whole Food Meals,* and *Every Day Vegan Pressure Cooking.* Jill and Richard reside in Gualala, Sonoma County, after having lived for many years in Santa Rosa.

**Education History**

Shane was raised and attended public schools in Santa Rosa. As a child he had difficulty sleeping and was prescribed Phenergan (Promethazine), an antihistamine to aid his sleep. Shane did not particularly like school, although he excelled in math; doing well in fifth grade math while still only in third grade. He was a favorite of his teacher and motivated at that time to do well. However, the teacher was dismissed from the faculty, which was a blow to Shane and, according to his parents, undermined his motivation in school. Around the same time video games became popular and according to Shane's parents there was constant conflict over Shane's excessive time playing video games and not giving sufficient attention and time to his schoolwork. His parents report that, even then, Shane's obsession with video games had an

"addictive" quality to it.

Shane completed elementary school in Santa Rosa School District. He then transferred to a specialized middle school outside the district. In 7th grade, Shane took his collection of pocketknives to school in his backpack to show to his friends. Staff found out and Shane was expelled from the school. He enrolled at a charter school in Santa Rosa but was expelled again for making threats over the internet. When Shane began high school, he entered the Arts and Ethics Charter High School, a school designed for students who struggled in school. He barely got through his 9th grade year and after one year transferred to the mainstream Santa Rosa High School, where he continued to struggle academically. As explained in more detail below, he also began, at the age of 13, smoking marijuana and drinking alcohol.

At the age of 15 Shane took the exam to obtain his high school Proficiency Certificate and passed the exam. He then attended Santa Rosa Junior College, off and on over the next five years, earning approximately 25 units.

After Shane passed the proficiency exam, he began a pattern of changing his living situations. He lived with his parents. He lived alone separately from them. He sometimes lived with friends. He was sometimes alone on the streets. At one point, his parents arranged a motor home for him to live in so he would be "safe." His parents indicated that they tried to find the most appropriate living situation, consistent with their desire to exercise some parental control and supervision and Shane's desire for autonomy. No particular solution to this conflict was ever reached.

Shane's work history includes episodic work as an auto detailer and construction assistant. He has never been married and as an adult he has had no long-term romantic

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

relationships.

At the time of the instant offense, Shane was transient. He had been recently released from the Sonoma County Jail after serving a sentence for a probation violation. In October 2019, Shane relocated to the San Antonio, Texas area, where he was apprehended on a warrant for the instant offense.

**Substance Use and Abuse History**

Beginning at age 13, Shane began smoking marijuana and drinking different alcoholic beverages. He then began experimenting with psychedelic drugs such as DMT and LSD. He also began periodically using Ecstasy (MDMA). By the time he was 16 years old, Shane had also used cocaine, cocaine base (crack), and methamphetamine. Shane was in multiple motor vehicle accidents when he was 17. Post-accident, he was prescribed various analgesics for pain. Drugs that he used, both by prescription and "off the street," included oxycodone, Dilaudid, morphine, and methadone. Based on availability, Shane also used various benzodiazepine drugs such as Valium, Xanax, and Klonopin.

Shortly after he turned 20 years old, Shane tried heroin, which he has described as his "drug of choice" since then. He stated that at first, he used heroin for the pain he still experienced after the car accidents. However, when he no longer needed drugs for pain, he continued using heroin, as he had become addicted. Shane reported, "At first it was for pain. Then it helped me 'check out.' It made me feel okay even though I wasn't."

Shane stated that during the approximate two years before the instant offense, he experienced a relatively long period of time clean and sober. He attended 12 step meetings and was developing a circle of friends who were also pursuing sobriety. However, he began using

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

drugs again and reported that the heroin he was using was not producing the desired effect. He turned to using Fentanyl. He was addicted to Fentanyl at the time of the present offense and two months later when he was apprehended in Texas.

Shane's first experience with focused drug treatment took place when he was 17 and had been arrested with a female adult who was in possession of methamphetamine. The juvenile court ordered him to attend an intensive outpatient program offered by Kaiser in Sonoma County. Shane's participation in the program was erratic. He was referred for a comprehensive psychological evaluation, which was completed December 8, 2010. The examiner concluded with a diagnosis of Generalized Anxiety Disorder, Obsessive Compulsive features and Trauma features. He also exhibited superior intellectual development.

Over the years, Shane has entered a number of residential substance abuse programs, including short term detoxification programs, sober living houses, and structured residential programs, both short and long term. Programs he entered and from which he was expelled include Lytton Springs Salvation Army in Healdsburg, California, Henry Ohlhoff House in Novato, California, Turning Point in Santa Rosa, California, Orenda Center in Santa Rosa, and Marin Services for Men in San Rafael, California. The one program he entered and successfully completed in October 2016, was Olympia House in Petaluma, California. Upon discharge he received a diagnosis of Opioid Use Disorder - Severe, Sedative Hypnotic, or Anxiolytic Use Disorder - Moderate, Amphetamine Use Disorder - Moderate, Major Depressive Disorder, and Oppositional Defiant Disorder.

Shane's parents have endeavored over the years to obtain expert treatment services for Shane. In 2013, they contacted Richard Diffenderfer who purported to have an expertise in

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

chemical abuse treatment. He owned several sober living facilities. He also was unbeknownst to them unlicensed. Diffenderfer referred Shane to Michael Chiarottino, M.D. of San Rafael, for detoxification services in anticipation of entering a sober living facility in which Richard Diffenderfer had a financial interest. The "detox" services cost the family a fortune. Dr. Chiarottino has since lost his license to practice medicine and sentenced to Federal Prison for three years for prescription fraud.[1] Diffenderfer has been accused of failing to provide promised services to residents of his sober living facilities.[2] Thus, rather than benefit from the "treatment services" offered by Diffendefer and Chiarottino, Shane and his family were victimized by them.

Medical records indicate that Shane has had sleep problems into his adulthood. Shane has been in three significant motor vehicle accidents, the most serious of which occurred when he was 17 years old. He lost consciousness in two separate accidents. For pain regulation after the accidents, Shane was prescribed opiates including Oxycodone, Dilaudid, morphine, and methadone. From ages 15 to 22, Shane suffered from a Cyclic Vomiting syndrome, which led to multiple emergency room visits.

At the time of the offense in this case Shane was addicted to Fentanyl. He was a transient. He had moved to San Antonio, Texas where he was arrested, without incident, when a warrant issued in this case. At the time of his apprehension in Texas in mid-December 2019, Shane experienced severe opiate drug withdrawal. He was prescribed Gabapentin, Wellbutrin,

---

[1] https://www.northbaybusinessjournal.com/article/industry-news/san-rafael-detox-doc-chiarottino-pleads-guilty-on-drug-charges/; https://www.justice.gov/usao-ndca/pr/marin-doctor-sentenced-three-years-prison-prescribing-oxycodone-outside-usual-course

[2] https://abc7news.com/dr-d-doctor-richard-diffenderfer-sober-living-house/779744/; https://www.pressdemocrat.com/article/news/santa-rosa-man-who-posed-as-drug-rehab-counselor-gets-jail/

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

and Doxepin to treat the withdrawal. While in custody at Santa Rita for the present offense, Shane has been prescribed Remeron (mirtazapine) for sleep. Remeron is an anti-depressant that also is used for sleep, anxiety, and posttraumatic stress disorder. Since he was put in custody at Santa Rita, where he remains today, he has been prescribed Remeron (mirtazapine) for sleep problems. Remeron is an anti-depressant that is also used to treat his anxiety and Posttraumatic Stress Disorder.

After attending the Kaiser outpatient Chemical Dependency Program, when he was 17, Shane began seeing Psychiatrist Dr. Barry Pierce. He consulted with Dr. Pierce, off and on, from December 2010 to May 2019. Records indicate Dr. Pierce consulted with Shane primarily for medicine management.

As an adolescent Shane was in counseling with Robert Casanova, MFT. Shane saw Mr. Casanova for several months. Shane had no other mental health treatment. It has all been chemical dependency related.

Shane has sustained five prior convictions, three of which were for drug related offenses and two for theft related offenses. In each case he was admitted to probation, with jail as a condition of probation. The offenses were for possession of a controlled substance, possession for sale of controlled substance, transportation of a controlled substance, theft from a person, and theft. Probation violation petitions were filed multiple times, primarily for substance use/possession resulting in additional local time. Shane has never been in prison and his prior record is clearly that of an active addict.

### III. SENTENCING LAW SUPPORTS 84 MONTHS

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

*United States v. Booker*, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), changed sentencing in the Federal Courts. *Booker* renders the Guidelines as advisory only and instructs the sentencing courts to consider the Guidelines in context of all of those factors enumerated in Title 18 USC 3553(a).

> ". . . Section 3553(a) remains in effect and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Booker*, at 661.

The Supreme Court addressed the issue of the "presumption of reasonableness" of a within Guidelines sentence in *Rita v. United States*, 551 S.Ct. 338, 127 U.S. 2456, 168 L.Ed. 2d 203 (2007) and instructed that a within Guideline sentence is presumed reasonable only upon **appellate review**. The Court stated:

> "We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review." *Rita,* at 351.

Further, the Court instructed:

> "The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that the appellate courts may not presume that every variance from the advisory Guidelines is unreasonable." at 354.

The Ninth Circuit reiterated this premise in *United States v. Edwards*, 595 F.3d 1004, 1015 (9th Cir. 2010) ([Court] cannot presume a sentence is substantively unreasonable only because it falls outside the range recommended by the Sentencing Commission).

Indeed, in *Irizarry v. United States*, 128 S.Ct. 2198, 2202, 171 L.Ed. 2d 28 (2008), the Court ruled that a variance from the sentencing Guideline range did not even require notice to the parties.

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

The Ninth Circuit was heard on the presumption of reasonableness and directed that even on appeal the presumption of a Guideline sentence may not be reasonable. It stated:

> ". . . A court of appeals may *not* presume that a non-Guidelines sentence is *un*reasonable. Although a court may presume on appeal that a sentence within the Guidelines range is reasonable, *id*, we decline to adopt such a presumption in this circuit." **United States v. Carty**, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

The Guideline range is simply the beginning of the analysis for sentencing, not the end. The Ninth Circuit stated:

> "'The Guideline's factor may not be given more or less weight than any other.' So while the Guidelines are the 'starting point and initial benchmark' and must 'be kept in mind throughout the sentencing process,' the Guideline's range constitutes only a touch-stone in the district court's sentencing consideration." **United States v. Autery**, 555 F.3d 864, 8l72 (9th Cir. 2009)

The Court must now consider 18 USC 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The court, in determining the particular sentence to be imposed, shall consider –

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed --

    (a) to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

    (b) to afford adequate deterrence to criminal conduct;

    (c) to protect the public from further crimes of the defendant; and

    (d) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

The sentencing court is now required to consider factors that the Guidelines effectively

prohibited from consideration. ***United States v. Ameline***, 409 F.3d 1073, 1093 (9th Cir. 2005) (*en banc*).

## IV. A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY

Although this is a case of conspiracy to sell drugs, it is colored by the tragic loss of a young child and father. Shane Cratty never anticipated and certainly did not intend these deaths; he was nevertheless part of a series of actions which culminated in this tremendous loss. The sentencing of 28-year-old Shane Cratty is precisely the sort of case anticipated in the ruling of ***Booker***. His sentence should be individualized, guided by the principles in 3553. The overwhelming salient factor in this case is addiction. It is the reason for his behavior before this offense and the reason for his involvement in this offense. He began using drugs at age 13 and continued essentially unabated until his arrest for this offense. Indeed, he went through difficult withdrawal after his arrest.

Information from law enforcement indicates that Shane's role in this offense was that of a transportation and delivery person. He did not own the drugs being delivered. Fentanyl is well known as a powerful and dangerous drug. Its use is reckless. That Shane himself used Fentanyl is an indicator of the power of his addiction to opiates.

Over the years, Shane has endeavored to deal with his addiction by entering a number of different programs. His search for effective treatment took him to well established treatment providers and charlatans. Shane did not just accept that he was hopelessly addicted, he attempted to deal with his addiction.

Seven years is a long sentence, particularly for someone young, without any prison experience. Such a sentence will hold Shane accountable, will serve as a deterrent for both him

DEFENDANT'S SENTENCING
MEMORANDUM [3:19CR00681-003CRB]

and society in general and will promote respect for the law. It is a sentence that will enable Shane to enter and complete the RDAP program.

Seven years is sufficient, but not greater than necessary to accomplish the goals of sentencing.

Dated 6 October 2021      Respectfully Submitted,

/s/

Gregor D. Guy-Smith
Attorney for Defendant
SHANE CRATTY